**BEFORE THE UNITED STATES JUDICIAL PANEL**
**ON MULTIDISTRICT LITIGATION**

| | | |
|---|---|---|
| | ) | |
| In re: Uber TCPA Litigation | ) | MDL Docket No. |
| | ) | |
| _____ | ) | |

## BRIEF IN SUPPORT OF MOTION TO TRANSFER RELATED ACTIONS TO THE NORTHERN DISTRICT OF ILLINOIS PURSUANT TO 28 U.S.C. § 1407 FOR COORDINATED OR CONSOLIDATED PRETRIAL PROCEEDINGS

Movant Carmellia Calmese, the plaintiff in the action styled *Calmese v. Uber Technologies, Inc.*, No. 16-cv-06277 (N.D. Ill.), submits this Brief in Support of her Motion to Transfer Related Actions to the Northern District of Illinois Pursuant to 28 U.S.C. § 1407 for Coordinated or Consolidated Pretrial proceedings. Movant seeks the transfer of all eleven related actions listed in the accompanying Schedule of Actions attached hereto (collectively, the "Scheduled Actions") to the Northern District of Illinois, Eastern Division for consolidated and coordinated pretrial proceedings.

In order to prevent certification of overlapping classes and inconsistent class certification rulings, and to promote the just and efficient pretrial conduct of these cases and the convenience of the parties and witnesses, the eleven Scheduled Actions and any other related actions that may be subsequently-filed should be transferred to a single court for coordinated pre-trial proceedings. Movant respectfully requests that each of the Scheduled Actions be transferred to the Honorable Sharon Johnson Coleman of the Northern District of Illinois, Eastern Division. The Northern District of Illinois has a strong nexus to the conduct at issue, is centrally located and convenient for parties, witnesses, and counsel, and is experienced in and fully capable of handling multi-district litigation, as is Judge Coleman.

## BACKGROUND

Movant brought a class action suit against Uber Technologies, Inc. ("Uber"), asserting that Uber violated the Telephone Consumer Protection Act, 47 U.S.C. § 227 (the "TCPA"). *Calmese v. Uber Technologies, Inc.*, No. 16-cv-06277 (N.D. Ill.). Specifically, Plaintiff *Calmese* asserts that Uber violated Section 227(b)(1)(A)(iii) of the TCPA by making text message calls to her and other putative class members when it did not have valid, prior express consent to make such calls. The *Calmese* action was brought in the Northern District of Illinois and is pending before Judge Sharon Johnson Coleman.

In addition to *Calmese*, there are three other TCPA class actions against Uber in the Northern District of Illinois alone, including *Charles Christopher Johnson v. Uber Technologies, Inc.*, 16-cv-05468 (N.D. Ill.), *Matthew Johnson v. Uber Technologies, Inc.*, 16-cv-50113 (N.D. Ill.), and *Vergara v. Uber Technologies, Inc.*, 15-cv-06942 (N.D. Ill.). Outside the Northern District of Illinois, there are another six TCPA class actions pending against Uber that involve similar claims. There is also one individual suit against Uber currently pending in the Northern District of California that also alleges violations of the TCPA. Beyond these pending cases, there are other TCPA cases against Uber that have been filed but are no longer pending, as well as a likelihood that additional plaintiffs will file TCPA cases against Uber in the near future.[1]

Uber, the only defendant in each of the eleven Scheduled Actions, is an international, multi-billion dollar technology company that provides a software application (or "app") for smart-phones that connects drivers with passengers seeking vehicular transportation. For passengers, the Uber app functions like a taxi-style transportation service. Passengers may submit trip requests through

---

[1] For example, several additional TCPA cases were recently filed against Uber, including a class action, that were later dismissed pursuant to stipulation. *See, e.g., Gordon v. Uber Technologies, Inc.*, No. 15-cv-03008 (N.D. Ga.); *Sabatino v. Uber Technologies, Inc.*, No. 15-cv-00363 (N.D. Cal.); *Bank v. Uber Technologies, Inc.*, No. 15-cv-04858 (E.D.N.Y).

Uber's app, which then connects the passenger to an Uber driver who uses his or her own vehicle to transport the passenger to a requested destination. Uber's app and technology platform is available for use and marketed to prospective drivers and passengers throughout the United States and over 400 cities worldwide. Uber markets and promotes its services to current and potential drivers and passengers through, among other things, SMS text messages sent to individuals' cellphones.

As explained in greater detail below, the Scheduled Actions all allege substantially identical facts and legal claims: all are premised on the legal theory that Uber violated the TCPA by making unauthorized text message calls to the wireless telephone numbers of the plaintiffs without valid prior express consent to place such calls to the recipients. All eleven of the Scheduled Actions complain of the same or similar offending conduct of receiving an unauthorized text message call on a cellphone placed through an Automatic Telephone Dialing System ("ATDS"), *see* 47 U.S.C. § 227(a)(1). In addition, all eleven Scheduled Actions seek damages and other relief under the TCPA, and all but one seek injunctive relief against Uber.

## <u>ARGUMENT</u>

Each of the eleven actions that comprise the Scheduled Actions under this Panel's consideration seeks redress under the TCPA for Uber's unauthorized automated text message calls in violation of the TCPA. Each of the eleven actions alleges violations of the same federal law, and determining liability and damages would involve substantially similar discovery, time, and resources such that transfer and consolidation are proper. Given the location of the lawsuits, the parties, third-parties, the witnesses, and counsel, the Northern District of Illinois is the most convenient and appropriate location for these cases to be centralized.

**I.  The Eleven Scheduled Actions Should Be Transferred and Consolidated.**

Under 28 U.S.C. § 1407, the Judicial Panel on Multidistrict Litigation (the "Panel") may transfer civil actions pending in more than one district "involving one or more common questions of fact" to a single district for "coordinated or consolidated pretrial proceedings" upon a determination that transfer "will be for the convenience of parties and witnesses and will promote the just and efficient conduct of such action." § 1407(a). These statutory objectives are served if transfer and consolidation would "eliminate duplication in discovery, avoid conflicting rulings and schedules, reduce litigation costs, and save the time and effort of the parties, the attorneys, the witnesses, and the courts." *Manual for Complex Litigation, Fourth* § 20.131 (2004). This Panel has had occasion to consider these statutory objectives in the context of multiple TCPA actions against a single defendant, as is the case with the Scheduled Actions, and has consistently held that transfer and consolidation of such actions satisfies the objectives and purposes of § 1407. *See, e.g., In re: Collecto, Inc., Tel. Consumer Prot. Act (TCPA) Litig.*, 999 F. Supp. 2d 1373, 1374 (J.P.M.L. 2014); *In re: Monitronics Int'l, Inc., Tel. Consumer Prot. Act Litig.*, 988 F. Supp. 2d 1364, 1367 (J.P.M.L. 2013); *In re: Convergent Tel. Consumer Prot. Act Litig.*, 981 F. Supp. 2d 1385, 1387 (J.P.M.L. 2013).

**A.  The Scheduled Actions involve common questions of fact and law that should be coordinated and/or consolidated for pre-trial purposes.**

When considering whether to transfer and coordinate or consolidate actions into an MDL, this Panel first looks to see if the allegations in the cases share a commonality of factual and legal issues. *See, e.g., In re: Portfolio Recovery Associates, LLC, Tel. Consumer Prot. Act Litig.*, 846 F. Supp. 2d 1380, 1381 (J.P.M.L. 2011) ("These actions share factual questions arising out of allegations that [the defendant] violated the federal Telephone Consumer Protection Act by placing debt collection calls to debtors' cell phones using an automated system, without the debtors'

consent"); *In re: Monitronics Int'l, Inc.*, 988 F. Supp. 2d at 1366 ("These actions share common factual allegations regarding Monitronics' policies and procedures for calling consumers, directly or through agents, for the purpose of selling home security products or services, as well as its procedures for obtaining and recording a consumer's consent to receive such calls"); *In re Hannaford Bros. Co. Customer Data Sec. Breach Litig.*, 559 F. Supp. 2d 1405, 1406 (J.P.M.L. 2008) ("All of these actions arise from an intrusion into [defendant's] computer network.")

The threshold question of Section 1407 – that there be one or more questions of fact common to the cases for which MDL treatment is sought – is easily met in TCPA cases and is satisfied here. Uber is the only defendant named in all eleven Scheduled Actions, and each action arises from the same course of conduct by Uber and its agents — namely, the placement of text message calls to the cellphones of individuals who had not provided valid consent to receive such text message calls, or who had revoked any consent to receive such calls. As a result, the claims and allegations regarding the unauthorized text message calls at issue are similar in each of the Scheduled Actions.

All of the eleven Scheduled Actions assert nearly identical legal claims. Each of the actions asserts that the unauthorized, automated text message calls placed by Uber or its agents violated the TCPA. Moreover, each of the Scheduled Actions asserts similar factual allegations. In all eleven Scheduled Actions, the plaintiffs allege that the unauthorized text message calls from Uber were placed using an ATDS and without the recipients' prior express consent: *Calmese* Compl., ¶¶ 31-32 ; *Cubria* Compl., Dkt. 1, ¶¶ 29, 31; *Charles Christopher Johnson* Compl., Dkt. 1, ¶¶ 13, 29-31, 52; *Matthew Johnson* Compl., Dkt. 1, ¶¶ 4-5, 19, 28, 31, 37, 56-57; *Kafatos* Compl., Dkt. 1, ¶¶ 13, 16, 19; *Kolloukian* Compl., Dkt. 1, ¶¶ 1, 20, 29, 40; *Lainer* First Amend. Compl., Dkt. 16, ¶¶ 20, 22, 25, 28; *Lathrop* Second Amend. Compl., Dkt. 54, ¶¶ 30, 32, 37, 46, 48, 51, 59, 61,

73, 75, 78, 86, 88, 91, 96, 98; *Norman* Compl., Dkt. 1, ¶ 3; *Shaver* Compl., Dkt. 1, ¶¶ 24-26, 45; *Vergara* Compl., Dkt. 1, ¶¶ 15, 21-22, 31-32.

Further, in the *Kafatos*, *Kolloukian*, *Lainer*, and *Shaver* actions, the class definitions are nearly identical, and seek to include all individuals in the United States who received an unauthorized text message call from Uber. *See Kafatos* Compl., ¶ 19 ("all persons within the United States who received any unsolicited text messages and/or any other unsolicited text messages from Defendant without prior express consent"); *Kolloukian* Compl., ¶ 16 ("All persons within the United States who . . . received on their cellular phone any text messages initiated by Defendant without their consent."); *Lainer* Compl., ¶ 28 ("all persons within the United States who received any unsolicited text messages and/or any other unsolicited text messages from Defendant without prior express consent"); *Shaver* Compl. ¶ 28 ("All persons within the United States who . . . did not provide Defendant clear and conspicuous prior express written consent to be sent automated telemarketing text messages and who received one or more automated telemarketing text messages, from or on behalf of Defendant, to said person's cellular telephone, through the use of any automatic telephone dialing system.")

Thus, each of the eleven pending Scheduled Actions in the five federal districts where they were brought arise from the same or substantially similar set of facts, allege the same or substantially similar legal claims, and seek the same relief from Uber. Moreover, the *Kafatos*, *Kolloukian*, *Lainer*, and *Shaver* actions were brought on behalf of essentially the same class of persons. Accordingly, the threshold question of commonality of the factual and legal issues between the cases is satisfied here.

**B.    Coordination and consolidation is appropriate notwithstanding the presence of individual or state law claims against Uber.**

Because the Scheduled Actions all assert TCPA claims that arise out of a similar set of facts involving automated text message calls that Uber placed to individuals' cellphones without the called parties' consent to receive such calls, transfer and consolidation is appropriate notwithstanding the fact that the *Kolloukian* action includes an additional state law claim. As the Panel noted in *In re: Convergent Tel. Consumer Prot. Act Litig.*, "the Panel has long held that the presence of unique claims is not a bar to transfer." 981 F. Supp. 2d at 1387 (citing *In re: Satyam Computer Servs., Ltd., Sec. Litig.*, 712 F. Supp. 2d 1381, 1382 (J.P.M.L. 2010)).

Here, the *Kolloukian* complaint contains an additional count for Unfair Competition under Cal. Bus. & Prof. Code § 17200 *et seq.*, but the claim relates to and arises out of the same unauthorized text message calls that the *Kolloukian* plaintiff alleges violated the TCPA. *See Kolloukian* Compl., Dkt. 1, ¶ 40. Thus, the discovery surrounding this state law claim will be coextensive, if not identical, to the discovery undertaken for purposes of supporting the plaintiffs' causes of action under the TCPA, and the efficiencies that underlie the creation of an MDL will still be realized. Therefore, the ancillary state law claim in *Kolloukian* is not a factor that weighs against coordination or consolidation with the other ten actions.

Nor does the fact that *Norman* is an individual action impair the appropriateness of transfer of the Scheduled Actions for purposes of coordination and consolidation. As this Panel noted in a subsequent transfer order issued in *In re: Portfolio Recovery Associates*, "[i]t is not unusual for individual claims to proceed in an MDL with class claims, as all parties can benefit from discovery regarding a common factual core." Transfer Order, MDL No. 2295, at 1 (J.P.M.L. June 8, 2012). As in *Portfolio Recovery Associates*, each of the individual actions "involve allegations that defendant . . . called plaintiffs' cellular telephone without their permission using an automatic

dialing system in violation of the TCPA." *Id.* Thus the individual claim asserted in *Norman* should be coordinated or consolidated with the ten other class actions.

C. **Transfer will serve the interests of the courts, the parties, witnesses and counsel, and promote the just and efficient conduct of the Scheduled Actions.**

In addition to common issues of law and fact, coordination or consolidation pursuant to an MDL will further the convenience of the parties and witnesses and promote the just and efficient conduct of the litigation. Given that each of these cases arises from common facts and a common legal theory, counsel for the plaintiffs in all of the Scheduled Actions will be seeking the same documents and information from the same defendants and third-parties. These include, for example, documents and information relating to: (i) the list or lists of numbers that Uber collected and to which it sent text message calls; (ii) the scripts of the text messages themselves; (iii) the design and implementation of the automated system or systems used to place the text message calls at issue; (iv) Uber's or its agents' policies and procedures for obtaining consent to place the automated text message calls; (v) the methods by which Uber or its agents obtained the phone numbers of the plaintiffs and the other individuals called; and (vi) efforts taken by Uber to honor individuals' do-not-call requests or attempts to revoke consent to be called.

Each of the eleven Scheduled Actions will also include the same defenses. Prior express consent is a defense common to all of the plaintiffs' TCPA claims, and discoverable evidence of Uber's records showing consent, or lack thereof, will therefore be relevant in each case. Further, each of the Scheduled Actions will involve the same witnesses, including Uber's employees who oversaw or authorized its automated texting operation. And to the extent that third-parties were involved in Uber's automated texting operation, the Scheduled Actions will also be interested in overlapping third-party discovery obtainable through subpoena.

As a result, a single centralized and coordinated pretrial program will promote fairness and efficiency and "eliminate duplicative discovery; prevent inconsistent pretrial rulings, including with respect to class certification; and conserve the resources of the parties, their counsel, and the judiciary." *In re: Portfolio Recovery Associates*, 846 F. Supp. 2d at 1381. Absent transfer and consolidation, the district judges in each of the Scheduled Actions would be required to resolve many of the same pretrial issues, decide similar motions, and oversee parallel discovery. In addition, without consolidation of the Scheduled Actions, parties will be subject to duplicative discovery requests, while witnesses will have to bear the burden of attending multiple depositions regarding the same issues and facts. Transfer and consolidation will avoid duplication of effort and help prevent inconsistent or repetitive pretrial rulings.

Consolidation is particularly necessary to promote the just and efficient determination of actions where there are multiple putative class actions that present the danger of inconsistent rulings. Ten of the eleven Scheduled Actions seek certification of nationwide classes of consumers who received unauthorized, automated text message calls from Uber. In particular, the proposed class definitions in the *Kafatos*, *Kolloukian*, *Lainer*, and *Shaver* actions purport to encompass all individuals who received unauthorized text messages from Uber that were sent by an ATDS. These broad definitions would overlap with each other, and encompass the narrower definitions proposed in the other Scheduled Actions.

This Panel has held that the presence of such competing class actions "amplifies the need to have a single judge oversee the [proceedings]." *In re Cuisinart Food Processor Antitrust Litig.*, 506 F. Supp. 651, 655 (J.P.M.L. 1981); *see also In re Charlotte Russe, Inc., Fair and Accurate Credit Transactions Act (FACTA) Litig.*, 505 F. Supp. 2d 1377, 1378 (J.P.M.L. 2007) ("Centralization will . . . prevent inconsistent pretrial rulings, especially with respect to class

certification"); *In re Sugar Indus. Antitrust Litig.*, 395 F. Supp. 1271, 1273 (J.P.M.L. 1975) ("We have consistently held that transfer of actions under Section 1407 is appropriate, if not necessary, where the possibility of inconsistent class determination exists."). The risk of overlapping or inconsistent class certification rulings strongly supports consolidation or coordination of the Scheduled Actions.

**D. Transfer and consolidation will not burden or prejudice any of the parties to the Scheduled Actions.**

Transferring and consolidating the Scheduled Actions will not burden or prejudice Uber or the other parties involved in these suits. To the contrary, Uber stands to gain from the efficiencies described above, including not having to engage in identical discovery and pretrial motions for eleven separate cases in six different courts located in five different districts scattered across the entire country. In addition, the Scheduled Actions are sufficiently early in terms of their procedural posture such that all parties will reap substantial benefits of coordination or consolidation.

For example, the *Calamese, Shaver, Norman, Cubria, Charles Christopher Johnson*, and *Matthew Johnson* actions have all been recently filed within the last couple months. *Calmese* was filed June 15, 2016; *Shaver* was filed June 7, 2016; *Norman* was filed May 31, 2016; *Charles Christopher Johnson* was filed May 23, 2016; *Cubria* was filed May 4, 2016; and *Matthew Johnson* was filed May 2, 2016. In *Calmese, Shaver, Norman*, and *Cubria*, Uber has not even entered an appearance yet. And in the *Charles Christopher* and *Johnson Matthew Johnson* actions, Uber has appeared, but has yet to answer the plaintiffs' complaints. Coordinating and consolidating these nascent cases will not disrupt the litigation or burden the parties, and will actually result in administrative efficiency for the parties and the courts.

The other scheduled actions, most of which were filed in the latter part of 2015, are also fairly early in their procedural posture. For instance, in the *Vergara* action, 15-cv-06942 (N.D.

Ill.), which was originally filed August 7, 2015, there are still over four months remaining before the close of discovery. While the electronic filings on PACER do not indicate to what extent discovery has already been exchanged by the parties, it does not appear that any protective order has even been entered yet. *Vergara* thus demonstrates that coordinated and consolidated pretrial proceedings will result in administrative efficiencies for even the earlier filed actions among the Scheduled Actions.

The *Lathrop* action, 14-cv-05678 (N.D. Cal.), is the oldest and the most advanced of the eleven actions. *Lathrop* was filed on December 31, 2014. The parties litigated a motion to dismiss, which was denied in part, Dkt. 49, after which the *Lathrop* plaintiffs amended their complaint. Dkt. 54. Uber answered on August 12, 2015, Dkt. 56, after which Uber moved to stay the case pending the outcome of the U.S. Supreme Court's decision in *Spokeo, Inc. v. Robins*, 136 S. Ct. 1540 (2016). The court denied that motion on January 8, 2016. Dkt. 112. Since then, Uber has moved for summary judgment. Dkt. 146. However, the motion is not fully briefed, and the parties await ruling on plaintiffs' discovery motion. Dkt. 172. Nonetheless, *Lathrop*'s somewhat more advanced procedural posture should not weigh against transfer, as the issues raised in the parties' summary judgment briefs would be best resolved in an MDL, where the Panel's orders on dispositive issues will avoid the risk of overlapping classes or contradictory rulings.

Finally, the *Lainer* action, 15-cv-09925 (C.D. Cal.), is also one of the more procedurally distinguishable cases, with the court having recently granted Uber's motion to compel arbitration. Dkt. 25. However, that decision is presently on appeal to the Ninth Circuit, and it is unclear to what extent the parties have further discovery to undertake, especially given that Uber never answered the *Lainer* plaintiff's complaint.

While the *Lathrop* and *Lainer* actions are in a different procedural posture than the remaining nine actions, transfer of all of the Scheduled Actions for centralized discovery and pretrial proceedings will further the principal objectives of fair and efficient adjudication of the controversy under 28 U.S.C. § 1407. As this Panel has noted, "the point at which an action should be excluded from centralized proceedings is not definite." *In re: Fosamax (Alendronate Sodium) Products Liab. Litig. (No. II)*, 787 F. Supp. 2d 1355, 1356 (J.P.M.L 2011). In addition, while discovery has already begun in the *Lathrop* and *Vergara* actions, "significant pretrial proceedings remain." *Id.* Significant time and effort can be conserved by having centralized discovery among all eleven Scheduled Actions in advance of the parties in the *Lathrop* and *Vergara* actions having to finish parallel discovery on the same subjects and in advance of the courts' ruling on issues that are relevant to all of the other Scheduled Actions. Moreover, any discovery that has already taken in any of the Scheduled Actions will not be wasted; all parties in the Scheduled Actions will be able to benefit from whatever discovery has been exchanged thus far, which can avoid duplicative discovery going forward.

II.    **The Scheduled Actions Should Be Transferred To Judge Sharon Johnson Coleman Of The Northern District Of Illinois**

    A.    **The Northern District of Illinois is centrally located and is the most convenient forum for litigating all of the Scheduled Action.**

The eleven Scheduled Actions that Movant seeks to coordinate or consolidate are located in six different courts located in five federal districts across the country—from California to Texas to Florida. Of the eleven cases that comprise this litigation, ten were filed as class actions, and one was filed as an individual action. Of the ten class action suits pending in federal district courts throughout the country, four are in the Northern District of Illinois, two are in the Northern District of California, two are in the Central District of California, one is in the Western District of Texas,

and one is in the Southern District of Florida. The individual action is in the Northern District of California.

Further, Uber's TCPA violations are not limited to or localized in any particular state or geographic area, as thousands of individuals across the nation, including many in Illinois, were recipients of the unauthorized automated text message calls. In situations where, as here, there is a "dispersed location of constituent actions" and "no district stands out as the focal point for [a] nationwide docket," transfer is appropriate to a district: (i) where at least one action is pending; (ii) that is a geographically central location and is relatively convenient for the parties, and (iii) the court possesses the necessary resources to be able to devote the time and effort to pretrial matter. *In re Wireless Tel. 911 Calls Litig.*, 259 F. Supp. 2d at 1374. In fact, Chicago is one of Uber's largest and most mature markets,[2] with a significant number of putative class members inevitably located within the territorial boundaries of the Northern District of Illinois.

All three factors are met as to the Northern District of Illinois, making it the most appropriate forum. The first factor is satisfied because there are already at least four actions currently pending in the Northern District of Illinois—the most of any federal district—including the *Calmese* action, the *Charles Christopher Johnson* action, the *Matthew Johnson* action, and the *Vergara* action. The second factor is also satisfied because Chicago, where the U.S. District Court for the Northern District of Illinois, Eastern Division resides, is centrally located between the California, Florida, and Texas cases.

Where, as here, the cases comprising a potential MDL are spread from coast to coast, this Panel has consistently found that the geographically-central Northern District of Illinois is

---

[2] The Chicago metropolitan area is one of Uber's largest and most mature markets, generating annual revenue in the hundreds of millions of dollars. *See* http://www.businessinsider.com/uber-revenue-rides-drivers-and-fares-2014-11.

"relatively convenient for the parties." *See In re Wireless Tel. 911 Calls Litig.*, 259 F. Supp. 2d 1372, 1374 (J.P.M.L. 2003). The Northern District of Illinois provides a "central and easily accessible location for all parties." *See In Re MLR, LLC, Patent Litig.*, 269 F. Supp. 2d 1380, 1382 (J.P.M.L. 2003). This is especially the case given that four of the Scheduled Actions are already located in the Northern District of Illinois.

Chicago, where the U.S. District Court for the Northern District of Illinois, Eastern Division is located, is centrally located in this wide geographical spread and will allow the parties to quickly and conveniently handle all court appearances. Chicago is served by two major airports which have frequent non-stop flights from Austin, San Francisco, Miami, and Los Angeles, the cities where the current courts and/or counsel for the litigants in the Scheduled Actions are located, making Chicago a location where counsel from all Scheduled Actions can conveniently fly.

Finally, as discussed in greater detail below, the Northern District of Illinois, and particularly Judge Coleman who is currently overseeing the *Calmese* action, possesses the necessary resources and experience to effectively manage the Scheduled Actions.

> **B.     The Northern District of Illinois and Judge Coleman are well situated to efficiently manage the pretrial proceedings of the Scheduled Actions.**

The Northern District of Illinois has the ability to efficiently and effectively manage the multi-district litigation of the Scheduled Actions. This Panel has repeatedly recognized the Northern District of Illinois as an appropriate transferee district that has the capacity to handle multi-district litigations, including class action cases involving violations of the TCPA. *See, e.g., In re: Capital One Tel. Consumer Prot. Act Litig.*, 908 F. Supp. 2d 1366, 1368 (J.P.M.L. 2012); *In re: Rust-Oleum Restore Mktg., Sales Practices & Products Liab. Litig.*, MDL No. 2602, 2015 WL 506421, at *1 (J.P.M.L. Feb. 6, 2015); *In re: Fluidmaster, Inc.*, MDL No. 2575, 2014 WL 7006711, at *2 (J.P.M.L. 11, 2014).

The Northern District of Illinois is one of the most efficient courts in the country at handling civil litigation, including MDL proceedings. The Northern District of Illinois has consistently served as a favored transferee court and is currently managing only 15 MDLs.[3] The Northern District of Illinois has significant experience with MDLs, and has consistently shown an ability to handle and resolve complex multidistrict litigation, such as this case, in an expeditious and fair manner, having terminated a total of 87 MDLs since 1971.[4]

Furthermore, Judge Sharon Johnson Coleman is well-suited to accept the coordinated or consolidated proceedings. Judge Coleman has served with distinction on the federal bench for nearly six years and served as both a trial and appellate judge in the Illinois state courts prior to her appointment. Judge Coleman, further, is experienced in dealing with complex litigation, and is eminently qualified to preside over an MDL. Judge Coleman is also familiar with the TCPA, having presided over multiple TCPA actions. And she can quickly become familiar with the facts at issue in the Scheduled Actions, as she currently presides over the *Calmese* action. She is also available, as she presently has no MDLs[5] on her docket. *See In re Silica Products Liab. Litig.*, 280 F. Supp. 2d 1381, 1383 (J.P.M.L. 2003) (emphasizing the fact that the transferee judge was a "seasoned" jurist with "a relatively low civil caseload"). By contrast, Judge Jon Tigar, who presides over the *Lathrop* action in the Northern District of California, already has an MDL assigned to him that consists of 68 actions.[6]

---

[3] *Pending MDLs By District as of June 15,* 2016, at 2-3, available at the J.P.M.L. website at http://www.jpml.uscourts.gov/sites/jpml/files/Pending_MDL_Dockets_By_District-June-15-2016.pdf.
[4] *Multidistrict Litigation Terminated Through September 30, 2015*, at 27, available at the J.P.M.L. website at http://www.jpml.uscourts.gov/sites/jpml/files/JPML_Cumulative_Terminated_Litigations-FY-2015.pdf.
[5] *Pending MDLs By District as of June 15,* 2016, at 2.
[6] *Id.*

While Judge Coleman has other matters to which she needs to attend, supervising this MDL should not prove significantly more burdensome that it would be to preside over any one of these eleven Scheduled Actions alone, or any other consumer class action generally. The eleven Scheduled Actions involve the same common course of conduct, the same violation and injury, and are asserted against a single common defendant. This MDL, therefore, is vastly different from those involving asbestos or product liability litigation where discovery encompasses thousands of plaintiffs and different individual defendants in each case. Here, all eleven Scheduled Actions involve the same general facts and the same law.

Based on the considerations discussed above, the Northern District of Illinois is the most appropriate forum for this litigation, and the Panel should consolidate and transfer the eleven Scheduled Actions, and all subsequently-filed related actions, to Judge Sharon Johnson Coleman of the Northern District of Illinois.

## CONCLUSION

For the foregoing reasons, pursuant to 28 U.S.C. § 1407, Movant respectfully requests that the Scheduled Actions listed in the contemporaneously-filed Schedule of Actions, and all similar or subsequently-filed related actions, be transferred and consolidated before Judge Sharon Johnson Coleman of the Northern District of Illinois.

Dated: June 22, 2016              Respectfully submitted,

By:/s/ Michael J. McMorrow
Michael J. McMorrow
McMORROW LAW, P.C.
One North LaSalle Street, 44th Floor
Chicago, Illinois 60602
Tel: (312) 265-0708
mike@mjmcmorrow.com

*Attorney for Plaintiff Carmellia Calmese*