## BEFORE THE JUDICIAL PANEL ON MULTIDISTRICT LITIGATION

|  |  |
|---|---|
| IN RE:  )  | |
| )  | |
| UBER TECHNOLOGIES, INC.,  )  | MDL Docket No. 2733 |
| TELEPHONE CONSUMER PROTECTION  )  | |
| ACT (TCPA) LITIGATION  )  | |
| )  | |
| )  | |
| )  | |
| )  | |

## DEFENDANT'S OPPOSITION TO PLAINTIFF'S MOTION TO TRANSFER RELATED ACTIONS PURSUANT TO 28 U.S.C. § 1407 FOR COORDINATED OR CONSOLIDATED PRETRIAL PROCEEDINGS

TIFFANY CHEUNG
LUCIA X. ROIBAL
MORRISON & FOERSTER LLP
425 Market Street
San Francisco, California  94105-2482
Telephone:  415.268.7000
Facsimile:  415.268.7522
E-mail:  TCheung@mofo.com
        LRoibal@mofo.com

*Attorneys for Defendant*
UBER TECHNOLOGIES, INC.

KAI S. BARTOLOMEO
MORRISON & FOERSTER LLP
12531 High Bluff Drive Suite 100
San Diego, California  92130-2040
Telephone:  858.720.5100
Facsimile:  858.720.5125
E-mail:  KBartolomeo@mofo.com

**TABLE OF CONTENTS**

**Page**

I.    INTRODUCTION ................................................................................................ 1

II.   SUMMARY OF THE ACTIONS.................................................................... 2

III.  THERE IS NO BASIS FOR INVOKING THE MDL PROCESS ................................... 3

    A.    The Issues Involved Are Not Sufficiently Complex to Justify Transfer. .............. 4

    B.    Plaintiff Cannot Show There Are "Numerous" Common Issues that Justify Transfer. ...................................................................................................... 7

    C.    Consolidation Would Hinder, Not Promote, Efficiency Because the Actions Are At Drastically Different Procedural Stages. .................................. 11

    D.    Transfer Is Not Necessary for the Convenience of the Parties and the Witnesses. ................................................................................................. 15

IV.   CONCLUSION ................................................................................................ 16

# TABLE OF AUTHORITIES

**Page(s)**

Cases

*In re Best Buy Co., Cal. Song-Beverly Credit Card Act Litig.,*
  804 F. Supp. 2d 1376 (J.P.M.L. 2011)...............................................................................4, 14

*In re Caribbean Cruise Line, Inc., Tel. Consumer Prot. Act (TCPA) Litig.,*
  89 F. Supp. 3d 1356 .......................................................................................................6

*In re Cessna Aircraft Distributorship Antitrust Litig.,*
  460 F. Supp. 159 (J.P.M.L. 1978)...................................................................................4

*In re Chiropractic Antitrust Litig.,*
  483 F. Supp. 811 (J.P.M.L. 1980)...................................................................................3

*In re CleanNet Franchise Agreement Contract Litig.,*
  38 F. Supp. 3d 1382 .......................................................................................................5

*In re Copper Antitrust Litig.,*
  269 F. Supp. 2d 1365 (J.P.M.L. 2003).........................................................................14

*In re Credit Prot. Ass'n Tel. Consumer Prot. Act (TCPA) Litig.,*
  No. MDL 2716, 2016 WL 3101382 (J.P.M.L. June 2, 2016)..................................7

*In re CVS Caremark Corp., Wage & Hour Emp't Practices Litig.,*
  684 F. Supp. 2d 1377 (J.P.M.L. 2010).........................................................................11

*In re Cyclobenzaprine Hydrochloride Extended Release Capsule Patent Litig.,*
  657 F. Supp. 2d 1375 (J.P.M.L. 2009).........................................................................11

*In re Cymbalta (Duloxetine) Prods. Liab. Litig.,*
  65 F. Supp. 3d 1393 .....................................................................................................11

*In re Eli Lilly & Co. (Cephalexin Monohydrate) Patent Litig.,*
  446 F. Supp. 242 (J.P.M.L. 1978)...............................................................................14

*In re Enhanced Recovery Co., LLC Tel. Consumer Prot. Act (TCPA) Litig. (No. II),*
  MDL No. 2717, 2016 WL 3101831 (J.P.M.L. June 2, 2016)...............................5, 6

*In re FedEx Ground Package Sys., Inc. Emp't Practices Litig.,*
  366 F. Supp. 2d 1381 (J.P.M.L 2005).........................................................................4

*In re Fout & Wuerdeman Litig.,*
  657 F. Supp. 2d 1371 (J.P.M.L. 2009).........................................................................4

*In re Hangtime, Inc. Tel. Consumer Prot. Act (TCPA) Litig.*,
  52 F. Supp. 3d 1375 ...................................................................................5

*In re Lifewatch, Inc., Tel. Consumer Prot. Act (TCPA) Litig.*,
  140 F. Supp. 3d 1342 ..................................................................4, 5, 6, 13

*In re Light Cigarettes Marketing & Sales Practices Litig.*,
  652 F. Supp. 2d 1379 (J.D.M.L. 2009) ........................................................11

*In re Local Lighthouse Corp. Tel. Consumer Prot. Act (TCPA) Litig.*,
  118 F. Supp. 3d 1379 .................................................................................5, 6, 9

*In re Maybelline N.Y. & L'Oreal Paris Cosmetic Prods. Mktg. & Sales Practices Litig.*,
  949 F. Supp. 2d 1367 (J.P.M.L. 2013) ..........................................................9

*In re Michaels Stores, Inc., Pin Pad Litig.*,
  844 F. Supp. 2d 1368 (J.P.M.L. 2012) ..........................................................4

*In re Multidistrict Civil Antitrust Actions Involving the Distribution of Scotch Whiskey*,
  299 F. Supp. 543 (J.P.M.L. 1969) ................................................................4

*In re Ocala Funding, LLC, Commercial Litig.*,
  867 F. Supp. 2d 1332 (J.P.M.L. 2012) ......................................................9, 11

*In re Pub. Records Collection Fair Credit Reporting Act (FCRA) Litig.*,
  641 F. Supp. 2d 1382 (J.P.M.L. 2009) .......................................................3, 4

*In re Quaker Oats Maple & Brown Sugar Instant Oatmeal Mktg. & Sales Practices Litig.*,
  MDL No. 2718, 2016 WL 3101830 (J.P.M.L. June 2, 2016) ...............................14

*In re Republic W. Ins. Co. Ins. Coverage Litig.*,
  206 F. Supp. 2d 1364 (J.P.M.L. 2002) ........................................................14

*In re Teamster Car Hauler Prods. Liab. Litig.*,
  856 F. Supp. 2d 1343 (J.P.M.L. 2012) ......................................................5, 13

*In re Tyson Foods, Inc., Meat Processing Facilities Fair Labor Standards Act (FLSA) Litig.*,
  581 F. Supp. 2d 1374 (J.P.M.L. 2008) ........................................................15

*In re USS Trenton Disaster Litig.*,
  383 F. Supp. 1406 (J.P.M.L. 1974) (per curiam).............................................15

*In re Waggin' Train Chicken Jerky Pet Treat Prods. Liab. Litig.,*
    893 F. Supp. 2d 1357 (J.P.M.L. 2012) ................................................................ 14

*In re Yellow Brass Plumbing Component Prods. Liab. Litig.,*
    844 F. Supp. 2d 1377 (J.P.M.L. 2012) ................................................................ 13

**STATUTES**

28 U.S.C. § 1407 ........................................................................................... passim

**RULES**

Local Rule 6.2(d) .................................................................................................. 2

Rule 30(b)(6) ....................................................................................................... 12

**OTHER AUTHORITIES**

15 Charles Alan Wright & Arthur R. Miller, *Federal Practice & Procedure* § 3863 (4th
    ed. 2016) ............................................................................................................ 15

Defendant Uber Technologies, Inc. ("Uber") submits this memorandum in opposition to Plaintiff Carmellia Calmese's ("Plaintiff") Motion to Transfer Related Actions to the Northern District of Illinois Pursuant to 28 U.S.C. § 1407 for Coordinated or Consolidated Pretrial Proceedings ("MDL Motion").  Uber respectfully requests that the Panel deny the MDL Motion.

## I.     INTRODUCTION

Plaintiff's MDL Motion seeks to centralize eleven cases (putative class actions and individual actions) pending in five different districts in different procedural postures with varying factual allegations.  Imposing the MDL process on these cases would hinder, not promote, efficiency.

The gravamen of these cases is neither legally nor factually complex — each case alleges a cause of action for purported violations of the Telephone Consumer Protection Act ("TCPA"). This Panel has repeatedly concluded that putative TCPA class actions, like those at issue here, do not involve complex or numerous common issues that warrant MDL treatment.  Plaintiff has not identified anything about this single claim here that compels a different result.

Instead of involving complex and numerous common issues, material factual and legal differences weigh against transfer.  Divergent facts regarding the alleged communications at issue and the plaintiffs' respective relationships with Uber render centralization inappropriate. These material variations, as well as differences in the class definitions alleged, will introduce *inefficiencies* in the litigation if these eleven cases are transferred under § 1407.

Critically, the varying procedural postures of the different actions also warrant denial of the MDL Motion.  In some actions, discovery is well underway.  In others, potentially dispositive motions are already on file or are soon-to-be filed.  One action has already been resolved.  Transfer would only delay or disrupt these proceedings, which are already being managed effectively by their respective district judges.

Finally, transfer is not necessary for the convenience of the parties and the witnesses. Three cases have already proceeded to discovery, and the locations of those cases have not caused inconvenience that would be solved by transfer.  The remaining cases have been or are

expected to be resolved through early motions to compel arbitration or pleading motions. Transferring these cases merely for decisions on arbitration or dispositive motions based on particular defenses to each plaintiff's specific claim does not make the litigation more convenient for the parties and the witnesses.

The Panel should deny Plaintiff's motion to transfer the actions for coordinated or consolidated pretrial proceedings.

## II.   SUMMARY OF THE ACTIONS

The MDL Motion seeks to transfer eleven actions pending in five district courts:  four in the Northern District of Illinois; three in the Northern District of California; two in the Central District of California; and one in each of the Western District of Texas and Southern District of Florida.  (*See* Schedule of Actions.)[1]

Substantive and procedural differences pervade these actions.  For example, and as discussed below, the cases allegedly involve text messages with widely varying content — ranging from alleged driver "promotions," to rider account registration confirmations, to requests to support discrete, local political issues — sent to different plaintiffs at different times. Likewise, the actions involve named plaintiffs with divergent relationships to Uber and different facts surrounding each plaintiff's consent to the text messages or purported revocation of such consent.

In addition to these substantive variations, the cases are at different procedural points and on varying trajectories, with some at procedurally early stages (Uber has still not been served in two of the actions and was served by Plaintiff in her underlying action the same day she filed her Motion to Transfer (Decl. of Tiffany Cheung ("Cheung Decl.") ¶ 7) and others well into discovery (including the completion of  and fact witness depositions).  (*Id.* ¶ 9.)  Four cases have

---

[1] On July 14, 2016, Plaintiff Valerie Marie Moore identified *Moore v. Uber Technologies, Inc.*, Case No. 3:16-cv-03870-MEJ (N.D. Cal.), as a potentially related action pursuant to J.P.M.L. Local Rule 6.2(d).  Uber has not yet fully investigated the allegations in the *Moore* action, but anticipates that this complaint may also be resolved by an early motion.  In any event, this additional complaint does not change the factors that counsel against transfer, including the lack of complexity in the TCPA claims, the widely divergent procedural postures of the underlying actions, or specific defenses to each plaintiff's claim.

already been litigated for eleven months or more.  In three cases, *Lainer*, *M. Johnson*, and *C. Johnson*, Uber has already moved to compel arbitration on an individual (non-class) basis.  (*Id.* ¶¶ 2, 13, 14, Exs. 1, 15, 16.)  In *Lainer*, the district court has already granted Uber's motion to enforce the arbitration provision and compel the plaintiff to pursue her claims in arbitration on an individual basis.  (*Id.* ¶ 3, Ex. 2.)  That action is now resolved.  (*Id.* ¶ 4, Ex. 3.)  Uber's motion for judgment on the pleadings is currently pending in *Vergara*.  (*Id.* ¶ 5, Ex. 4.)  In the remaining actions, Uber likewise intends to file a motion to compel arbitration or dispositive motions on the pleadings.  And while plaintiffs' counsel in the *Lathrop* matter speculates that the number of TCPA cases against Uber seem to be increasing (Dkt. No. 24 at 3 (noting that *one* additional case has been filed since the MDL Motion)), it appears that the most recent actions have been filed by attorneys who work closely with the plaintiffs' counsel seeking centralization.  (*See In re Volkswagen "Clean Diesel" Marketing, Sales Practices, and Products Liability Litigation*, Case No. 3:15-md-02672-CRB, Procedural Order No. 7, Dkt. No. 1084, *available at* http://www.cand.uscourts.gov/filelibrary/1696/Pretrial_Order_7.pdf (listing counsel for Plaintiffs *Moore* and *Lathrop* as co-members of the Plaintiffs' Steering Committee in *In re Volkswagen* MDL); *see also* be *Gomez v. Campbell-Ewald Company*, Case No. 2:10-cv-02007-DMG-AJW (C.D. Cal.), Electronic Case Docket (identifying counsel for Plaintiffs Calmese and Vergara as co-counsel in a recent TCPA putative class action).)  Finally, *Norman* and *Kolloukian* are individual actions with no class allegations pending.  (*See generally Norman* Compl.; Cheung Decl. ¶¶ 7, 12.)

## III.   THERE IS NO BASIS FOR INVOKING THE MDL PROCESS

To justify transfer and consolidation of pending actions for pretrial proceedings under § 1407, the moving party must demonstrate that: (1) the cases involve complex or numerous common questions of fact; (2) coordination and consolidation would ensure the just and efficient conduct of the actions; and (3) transfer is necessary to serve the convenience of the parties and witnesses.  *See, e.g., In re Chiropractic Antitrust Litig.*, 483 F. Supp. 811, 813 (J.P.M.L. 1980); *In re Pub. Records Collection Fair Credit Reporting Act (FCRA) Litig.*, 641 F. Supp. 2d 1382,

1382-83 (J.P.M.L. 2009) ("While the actions may share some threshold questions of law . . . , movants have failed to convince us that any common factual questions are sufficiently complex and/or numerous to justify Section 1407 transfer at this time.").  The party requesting transfer carries the burden to prove that transfer is warranted.  *See, e.g.*, *In re Fout & Wuerdeman Litig.*, 657 F. Supp. 2d 1371, 1371 (J.P.M.L. 2009) (holding that the "proponents of centralization have not convinced" the Panel that transfer under § 1407 is justified).  "Additionally, where only a minimal number of actions are involved, the proponent of centralization bears a heavier burden to demonstrate that centralization is appropriate." *In re Lifewatch, Inc., Tel. Consumer Prot. Act (TCPA) Litig.*, 140 F. Supp. 3d 1342, 1343 (J.P.M.L. 2015) (denying motion to transfer).

Plaintiff has not met her heavy burden.

### A.      The Issues Involved Are Not Sufficiently Complex to Justify Transfer.

Plaintiff asserts that the existence of "one or more" common facts is enough to necessitate transfer pursuant to § 1407.  (Mot. at 4-5.)  Not so.  The mere presence of a handful of common facts is not enough.  *See In re Cessna Aircraft Distributorship Antitrust Litig.*, 460 F. Supp. 159, 161-62 (J.P.M.L. 1978) ("[A] mere showing that [common] questions [of fact] exist is not sufficient, in and of itself, to warrant transfer by the Panel.").  Rather, common questions of fact must be sufficiently "complex, and/or numerous to justify Section 1407 transfer." *In re Pub. Records Collection FCRA Litig.*, 641 F. Supp. 2d at 1382-83; *see also In re FedEx Ground Package Sys., Inc. Emp't Practices Litig.*, 366 F. Supp. 2d 1381, 1382 (J.P.M.L 2005) (denying centralization of seven actions where movant "failed to persuade [the Panel] that any common questions of fact [were] sufficiently complex, unresolved and/or numerous to justify Section 1407 transfer").  Where, as here, there are a small number of actions at issue, the movant's burden is even greater:  he or she must show that the actions are "exceptional cases sharing unusually complex questions of fact." *In re Multidistrict Civil Antitrust Actions Involving the Distribution of Scotch Whiskey*, 299 F. Supp. 543, 544 (J.P.M.L. 1969); *In re Michaels Stores, Inc., Pin Pad Litig.*, 844 F. Supp. 2d 1368, 1368 (J.P.M.L. 2012) (total of seven actions deemed "minimal"); *In re Best Buy Co., Cal. Song-Beverly Credit Card Act Litig.*, 804 F. Supp. 2d 1376,

1379 (J.P.M.L. 2011) (concluding that proponents of centralization of more than twenty actions did not meet their burden to show need for centralization and noting that the proponent's burden is heightened where only a "minimal" number of actions is involved).

The common issues Plaintiff identifies in the MDL Motion are minimal, at best, and not sufficiently complex or numerous to warrant transfer under § 1407. Plaintiff highlights the fact that each of actions involves a primary legal claim for violation of the TCPA. But a common cause of action against a common defendant is not a sufficient basis for transfer under the statute. *See In re Teamster Car Hauler Prods. Liab. Litig.*, 856 F. Supp. 2d 1343, 1343 (J.P.M.L. 2012) ("Section 1407 does not, as a general rule, empower the Panel to transfer cases involving only common legal issues."); *In re CleanNet Franchise Agreement Contract Litig.*, 38 F. Supp. 3d 1382, 1382 (J.P.M.L. 2014) ("Seeking a uniform *legal* determination, though, generally is not a sufficient basis for centralization."). This Panel has found on multiple occasions that a common **TCPA** cause of action against a common defendant is not alone sufficient to justify an MDL transfer. *See, e.g.*, *In re Local Lighthouse Corp. Tel. Consumer Prot. Act (TCPA) Litig.*, 118 F. Supp. 3d 1379, 1379 (J.P.M.L. 2015) (denying transfer of actions alleging common TCPA claim against common defendant because, *inter alia*, common issues still were not sufficiently complex or numerous); *In re Enhanced Recovery Co., LLC Tel. Consumer Prot. Act (TCPA) Litig. (No. II)*, MDL No. 2717, 2016 WL 3101831, at *1 (J.P.M.L. June 2, 2016) (same).

Plaintiff's sole common "factual" question does not justify transfer either. Plaintiff argues that the common factual issue is whether Uber placed "text message calls to the cellphones of individuals who had not provided valid consent . . . or who had revoked any consent to receive such calls." (Mot. at 5.) This single issue is not sufficiently factually or legally complex to support granting the MDL Motion.

Indeed, the Panel has repeatedly concluded that TCPA actions, like those at issue here, were not appropriate for transfer precisely because the issues related to alleged calls or text messages sent without consent and did not meet the standards for factual or legal complexity. *See, e.g.*, *In re Hangtime, Inc. Tel. Consumer Prot. Act (TCPA) Litig.*, 52 F. Supp. 3d 1375, 1376

(J.P.M.L. 2014) (denying consolidation of TCPA cases asserting claims based upon text messages, finding such claims to be "not particularly complex"); *In re Caribbean Cruise Line, Inc., Tel. Consumer Prot. Act (TCPA) Litig.*, 89 F. Supp. 3d 1356, 1357 (J.P.M.L. 2015) (denying transfer of TCPA class actions involving text messages allegedly sent using an automatic telephone dialing machine ("ATDS") without prior express consent, finding that the issues presented — inquiries into the defendant's policies and procedures relating to its capabilities for texting or directing an agent to text and for obtaining and recording [TCPA] consent — were "not unusually complex"); *In re Holiday Cruise Line Tel. Consumer Prot. Act (TCPA) Litig.*, 118 F. Supp. 3d 1377, 1378 (J.P.M.L. 2015) (denying transfer of TCPA class actions based on alleged text messages and calls placed using an ATDS without prior express consent  where the common issues presented — inquiries regarding defendant's policies and procedures related to both text messages and telephone calls — were not complex and the number of common facts were limited); *In re Local Lighthouse Corp. TCPA Litig.*, 118 F. Supp. 3d at 1379 (denying transfer of TCPA class actions based on allegedly pre-recorded calls made using an ATDS without consent where "the factual issues are neither particularly complex nor numerous"); *In re Lifewatch, Inc. Tel. Consumer Prot. Act (TCPA) Litig.*, 140 F. Supp. 3d at 1343 (denying transfer of TCPA class actions, which involved alleged violations of different sections of the TCPA and varying facts, time periods, and putative classes, on the basis that "the issues presented [were] not particularly complex"); *In re Enhanced Recovery Co. Tel. Consumer Prot. Act (TCPA) Litig.*, 2016 WL 3101831, at *1 (denying transfer of TCPA class actions based on alleged auto-dialed calls to consumers, finding that "the factual issues presented [were] neither particularly complex nor numerous").

The Panel has similarly denied motions to transfer when the underlying cases involved purported revocation of consent, on the grounds that such issues were not sufficiently complex either.  *See, e.g.*, *In re Sirius XM Radio, Inc., Tel. Consumer Prot. Act (TCPA) Litig.*, 118 F. Supp. 3d 1376, 1376 (J.P.M.L. 2015) (denying transfer of seven TCPA actions based on calls allegedly placed without prior consent or after consent was revoked, finding that the issues were

-6-

"neither factually nor legally complex"); *In re Credit Prot. Ass'n Tel. Consumer Prot. Act (TCPA) Litig.*, No. MDL 2716, 2016 WL 3101382, at *1 (J.P.M.L. June 2, 2016) (denying transfer of eight TCPA actions based on alleged calls using an ATDS without prior express consent or after consent was revoked, finding that factual issues were "relatively straightforward").

The Panel has repeatedly rejected the argument that the single "common issue" Plaintiff has identified — text messages sent to individuals who did not consent or revoked consent — is sufficiently complex to warrant an MDL.  Plaintiff has not identified and cannot identify any common TCPA issues in the cases against Uber that are so much more complex than the TCPA issues the Panel has already found to be "relatively straightforward."[2]

> ### B.    Plaintiff Cannot Show There Are "Numerous" Common Issues that Justify Transfer.

Nor can Plaintiff establish that there are "numerous" common fact issues among the eleven cases.  The MDL Motion identifies only one:  the alleged "placement of text message calls to the cellphones of individuals who had not provided valid consent or who had revoked any consent to receive such calls."  (Mot. at 5.)  This single issue cannot meet the standard of establishing "numerous" common fact issues.  Indeed, any "common" fact issues are limited. For instance:

- **Plaintiffs' Relationships With Uber**:  The plaintiffs' respective relationships with Uber vary widely as well.  For example, certain plaintiffs allege that, prior to receiving messages from Uber, they "appli[ed]" to be an "Uber driver" and provided Uber with their telephone numbers.  (*See, e.g.*, *Lathrop* TAC ¶¶ 23-24, 38, 65, 78; *M. Johnson* Compl. ¶ 15; *Moore* Compl. ¶¶ 22-23.)  Other plaintiffs contend that they never contacted or conducted business with Uber.  (*Kafatos* Compl. ¶ 12; *Vergara* Compl. ¶ 21.)  Others admitted that they downloaded Uber's mobile app to their

---

[2] Although the Panel has granted certain MDL petitions involving TCPA claims, in all of those cases, the common defendant moved for or supported centralization because it would promote efficiency, unlike the underlying cases here.

wireless phones and created rider accounts prior to receiving messages from Uber. (*See, e.g.*, *C. Johnson* Compl. ¶ 32.)  Several plaintiffs entered into binding agreements that require their claims against Uber to be resolved through individual arbitration rather than in federal court.  (*See, e.g.*, Cheung Decl. ¶¶ 2, 13, 14, 16, Exs. 2, 15, 16.)

- **Content of the Purportedly Unauthorized Texts**:  There are material differences among the text messages allegedly received by the plaintiffs.  Some plaintiffs claim they were contacted to ***drive*** with Uber for a particular date (*e.g.*, New Year's Eve) or to take advantage of a particular "promotion."  (*See, e.g.*, *Lathrop* Third Amended Compl. "TAC" ¶¶ 30-31, 43.)  Others claim they were sent a verification code to confirm their Uber ***rider*** account information.  (*See, e.g.*, *Vergara* Compl. ¶ 18.)  And yet another plaintiff claims she received text messages urging her to support a local ballot measure.  (*See Cubria* Compl. ¶¶ 22, 24.)  Plaintiff has not explained how or why these divergent messages can be evaluated on a coordinated basis using common discovery.

- **Plaintiffs' Consent to Communications**:  The various plaintiffs also had different interactions with Uber related to their provision of consent or alleged revocation of consent to the communications at issue.  Certain plaintiffs do not dispute that they consented to receive certain of the text messages they allegedly received from Uber. (*See, e.g.*, *M. Johnson* Compl. ¶ 15-17; *see also id.* ¶ 39 (defining class to include only those who received a text from Uber *after* Uber "received a text message containing the single word 'STOP'").  Others claim that they attempted to opt out of receiving text messages by sending varying messages to Uber (*e.g.*, "wrong number" or "remove") that did not comply with the instructions Uber provided for opting out. (*See, e.g.*, *Cubria* Compl. ¶¶ 21-22; *Kolloukian* Compl. ¶ 15; *Lathrop* TAC ¶ 41.) Other plaintiffs, by contrast, seek relief in connection with *every* text they received from Uber.  (*See, e.g.*, *Calmese* Compl. ¶¶ 11-19.)

-8-

These differences matter.  *See, e.g.*, *In re Holiday Cruise Line Tel. Consumer Prot. Act (TCPA) Litig.*, 118 F. Supp. 3d at 1378 (denying transfer of TCPA actions that lacked sufficient "factual overlap" where certain cases involved text messages, other cases involved telephone calls made using an autodialer, and other cases involved purported violations of the "Do-Not-Call" registry); *In re Ocala Funding, LLC, Commercial Litig.*, 867 F. Supp. 2d 1332, 1332 (J.P.M.L. 2012) (denying transfer where actions involved divergent issues); *see also In re Maybelline N.Y. & L'Oreal Paris Cosmetic Prods. Mktg. & Sales Practices Litig.*, 949 F. Supp. 2d 1367, 1367 (J.P.M.L. 2013) (denying transfer where products at issue were not the same across the actions).  Although Plaintiff asserts, without any support, that each of the actions will involve the "same defenses" (Mot. at 8), each plaintiff's relationship with Uber and the messages he or she received will and has impacted the scope of discovery and the different legal issues that will need to be resolved, including the proper forum for the dispute and whether each plaintiff provided appropriate consent or properly revoked previously-given consent.[3]  Moreover, differences in how text messages were triggered and the specific "system" allegedly used to send the different text messages will lead to separate and distinct discovery regarding whether an "automatic telephone dialing system" under the TCPA was used.

Tellingly, different legal issues have already developed in the underlying cases.  In *Lainer*, Uber prevailed on a motion to compel arbitration based on the plaintiff's agreement to arbitrate her claims on an individual basis.  (Cheung Decl. ¶ 3, Ex. 2.)  In *Lathrop*, however, Uber moved for summary judgment on April 18, 2016, after the case had been pending for over sixteen months, on the grounds that the named plaintiffs provided their prior express consent to receive the messages at issue, Uber ceased sending messages if and when plaintiffs revoked their

---

[3]The underlying cases assert different allegations regarding the relevant legal standard for consent.  *Compare, e.g.*, Vergara Compl. ¶ 32 (alleging the "prior express consent" standard) *with* Calmese Compl. ¶ 32 (alleging the "prior express written consent" standard).  Moreover, certain plaintiffs assert consent issues based on the allegation that the previous owner of their phone number had consented to the text messages.  Pending proceedings before the D.C. Circuit may have an impact on those cases.  *ACA Int'l v. FCC*, No. 15-1211 (D.C. Cir. filed July 10, 2015) (reviewing standards related to liability for purported "wrong number" calls to consumers).  One case (*Kolloukian*) has already been stayed pending the D.C. Circuit's decision.  (Cheung Decl. ¶ 12.)

consent, and, with respect to one plaintiff, the messages at issue did not fall within the ambit of the TCPA. (Cheung Decl. ¶ 8, Ex. 6.)[4]  Plaintiff has offered no explanation for how plaintiff-specific defenses can be litigated and adjudicated more efficiently — or, indeed, at all — in an MDL.

Finally, although Plaintiff argues that similar or overlapping classes are involved across all cases, Plaintiff ignores the class definitions in most of the cases she seeks to consolidate. (*See* Mot. at 6.)  In *Cubria*, the plaintiff defines the purported class as those who "received a nonemergency text message . . . that references voting for Prop 1 [a local political issue] set for special election on May 7, 2016 in Austin, Texas." (*See Cubria* Compl. ¶ 34.)  *C. Johnson* defines the purported class as those "who received one or more text messages inviting them to sign up to drive for Uber." (*C. Johnson* Compl. ¶ 33.)  *M. Johnson* defines the purported class to include persons to whom Uber sent a message "after Defendant's records . . . indicate Defendant received a text message containing the single word "STOP" from that cellular telephone number." (*M. Johnson* Compl. ¶ 39.)  *Vergara* defines the class as those who "received one or more text message calls from Defendant where the called party was not the same individual who, according to Defendant's records, provided the phone number to Defendant." (*Vergara* Compl. ¶ 23.)  These varying class definitions further demonstrate why transfer is inappropriate.[5]

Of the four cases that Plaintiff claims have "nearly identical" class definitions (Mot. at 6), one of those cases (*Lainer*) has already been resolved, another case (*Kolloukian*) is now an individual action because the class allegations were stricken, and the third case (*Shaver*) will likely be compelled to arbitration.  The only putative class action that will remain in this group (*Kolloukian*) is already in the advanced stages of discovery.  In any event, as discussed below, any overlap in any purported class definitions does not justify transfer because the majority of

---

[4] On July 7, 2016, the district court in *Lathrop* granted plaintiffs' motion to defer decision on Uber's motion for summary judgment.

[5] *Norman* and *Kolloukian* are individual actions and, therefore, do not implicate class definitions. (*See generally Norman* Compl.; Cheung Decl. ¶ 11.)

the cases are expected to be resolved through early motions before discovery commences and class certification is litigated.

### C.   Consolidation Would Hinder, Not Promote, Efficiency Because the Actions Are At Drastically Different Procedural Stages.

Transfer under § 1407 is not warranted when the vastly differing procedural postures of the underlying cases will prevent any efficiency to be gained through the MDL process. *See In re Cymbalta (Duloxetine) Prods. Liab. Litig.*, 65 F. Supp. 3d 1393, 1393-94 (J.P.M.L. 2014); *In re Ocala Funding, LLC, Commercial Litig.*, 867 F. Supp. 2d at 1332.[6] The Panel frequently rejects petitions to transfer actions that are in significantly different procedural postures. *See, e.g.*, *In re Light Cigarettes Marketing & Sales Practices Litig.*, 652 F. Supp. 2d 1379, 1380-81 (J.D.M.L. 2009) (declining to transfer certain actions because they were "at a relatively advanced stage, and differ[ed] in significant ways from" the other actions); *In re CVS Caremark Corp., Wage & Hour Emp't Practices Litig.*, 684 F. Supp. 2d 1377, 1379 (J.P.M.L. 2010) (noting that "[t]he presence of procedural disparities among constituent cases is another factor that can weigh against centralization" and denying transfer in light of, *inter alia*, "quite different procedural postures" among the constituent actions).

Here, significant procedural differences among the cases weigh against centralization. The earliest action was filed in December 2014 (*see generally Lathrop* TAC); the most recent, more than eighteen months later, in July 2016 (*see generally Moore* Compl.). Discovery has been underway in *Lathrop* for over a year and, indeed, multiple discovery disputes have been

---

[6] Relying on *In re Cyclobenzaprine Hydrochloride Extended Release Capsule Patent Litig.*, 657 F. Supp. 2d 1375, 1376 (J.P.M.L. 2009), the *Lathrop* plaintiffs contend that the "Panel has previously rejected the argument 'that centralization might delay the progress of the [] earliest-filed' cases." (Dkt. No. 24 at 3.)  The Panel, however, did not reject the argument that varying procedural postures can and do render transfer and centralization inappropriate.  Indeed, plaintiffs' argument represents a significant departure from the reasoning and conclusions reached by the Panel in the cases cited herein.  Rather, the Panel in *Cyclobenzaprine* focused on the defendants' other argument (omitted from the language the *Lathrop* plaintiffs quote), not relevant here, regarding the alleged improper use of § 1407 to "deny" the transferor judge the discretion to manage the actions as she saw fit.  *See In re Cyclobenzaprine Hydrochloride Extended Release Capsule Patent Litig.*, 657 F. Supp. 2d at 1376.

-11-

litigated among the parties.[7]  (*See, e.g.*, Cheung Decl. ¶ 9, Exs. 7, 8, 9, 10, 11.)  Uber has already

been deposed in two Rule 30(b)(6) depositions and a number of other factual witness depositions

have already occurred.  (*Id.*)  Uber has filed a motion for summary judgment (*id.* ¶ 8, Ex. 6),

plaintiffs' and Uber's expert designations are due in October and November 2016, respectively

(*id.* ¶ 10, Ex. 12), and plaintiffs' motion for class certification is due in January 2017. (*Id.*)

Discovery is likewise underway in *Kafatos*, with a cut-off date of November 2016, and

Plaintiff's motion for class certification due in January as well.  (*See id.* ¶ 11, Ex. 13.)  Discovery

commenced in *Kolloukian* in late 2015 and will resume after the stay is lifted in that action.  (*See

id.* ¶ 12, Ex. 14.)  Similarly, discovery has been underway in *Vergara*, and fact discovery is

scheduled to close in October 2016 (*See id.* ¶ 6, Ex. 5.)

        In the cases that have not advanced to discovery, Uber expects the cases will be

compelled to arbitration on an individual basis and/or dismissed on pleadings motions.  In

*Lainer*, Uber has already prevailed on its motion to compel individual arbitration.  (*See* Cheung

Decl. ¶ 3, Ex. 2.)  The *Lainer* action is now resolved, and a dismissal will be entered shortly.  (*Id.*

¶ 4, Ex. 3.)  Numerous other plaintiffs likewise agreed to resolve their claims against Uber

through individual arbitration, and thus, their claims cannot proceed in federal court at all —

much less in an MDL.  Uber's motion to compel arbitration in *M. Johnson* is fully briefed.  (*See

id.* ¶ 13, Ex. 15.)  Uber's motion to compel arbitration in *C. Johnson* is pending (*see id.* ¶ 14, Ex.

16), and Uber's motion to compel arbitration in the *Shaver* action will soon follow (*see id* ¶ 16.)

Uber anticipates filing a motion to compel arbitration and/or a motion to dismiss in *Calmese*.

(*See id.* ¶ 15.)  In *Vergara*, Uber has filed a motion for judgment on the pleadings.  (*See id.* ¶ 5,

Ex. 4.)  Neither the *Cubria* nor *Norman* complaints have been served, but if they are, Uber

anticipates those claims will be similarly resolved through early motions.  (*See id.* ¶ 7.)  If all of

---

[7] Contrary to *Lathrop* counsel's representation that "discovery has now resumed" (Dkt. No. 24 at
3), discovery in that matter has been underway for over a year and has never been stayed.  Uber
has produced thousands of pages in that case and produced both fact witnesses and corporate
designees for deposition starting over six months ago. (Cheung Decl. ¶ 9.)  Further, the parties
have already litigated a number of discovery disputes, and the Court has denied a number of
Plaintiffs' discovery requests as improper. (*Id.*).

these cases are compelled to arbitration on an individual basis or dismissed at the pleading stage, any overlap in any of the purported class definitions will not matter because ***there will be no class claims to litigate***.  *See In re Yellow Brass Plumbing Component Prods. Liab. Litig.*, 844 F. Supp. 2d 1377, 1379 (J.P.M.L. 2012) (denying centralization in part because "one of the actions is being arbitrated and others could proceed to arbitration").  Further, at least two of the recently-filed actions have been filed by attorneys who have previously worked closely with the plaintiffs' counsel seeking centralization.  (*See In re Volkswagen "Clean Diesel" Marketing, Sales Practices, and Products Liability Litigation*, Case No. 3:15-md-02672-CRB, Procedural Order No. 7, Dkt. No. 1084, *available at* http://www.cand.uscourts.gov/filelibrary/1696/Pretrial_Order_7.pdf (listing counsel for *Moore* and *Lathrop* as co-members of the Plaintiffs' Steering Committee in *In re Volkswagen* MDL); *see also Gomez v. Campbell-Ewald Company*, Case No. 2:10-cv-02007-DMG-AJW (C.D. Cal.), Electronic Case Docket (noting that counsel for Plaintiff Calmese and Vergara worked together in a recent TCPA putative class action).)

Given these significantly differing procedural postures and trajectories, transfer and centralization is likely to delay or disrupt pretrial proceedings, not streamline them, and will prejudice Uber.  *See In re Lifewatch, Inc. TCPA Litig.*, 140 F. Supp. 3d at 1343; *see also In re Teamster Car Hauler Prods. Liab. Litig.*, 856 F. Supp. 2d at 1343 (noting that "centralization is not warranted here, as some of the actions have been pending in state or federal court for several years, and several are procedurally so far advanced that discovery is completed or nearly completed"); *In re Yellow Brass Plumbing Component Prods. Liab. Litig.*, 844 F. Supp. 2d at 1379 (denying centralization of thirteen actions in part due to "the relatively advanced progress of the District of Arizona Richards action").  For the cases in the midst of discovery with deadlines set for expert and class certification proceedings (including *Lathrop*), transfer and centralization with those cases will disrupt or delay the ongoing discovery and motions directed at the specific issues in those cases.

For those actions with arbitration or pleading motions currently pending or on the horizon, a favorable ruling will likely dispose of the claims or lead to early resolution, just as it did in *Lainer* (*see* Cheung Decl. ¶ 4, Ex. 3), and early resolution will eliminate the multidistrict character of the litigation.  The Panel routinely defers to the district courts rather than granting MDL status where a "reasonable prospect exists" that district courts themselves can potentially resolve the multidistrict character of the litigation.  *See, e.g.*, *In re Republic W. Ins. Co. Ins. Coverage Litig.*, 206 F. Supp. 2d 1364, 1365 (J.P.M.L. 2002) (denying § 1407 motion where prospect existed that transfer motions in district courts could resolve four of six related actions); *In re Copper Antitrust Litig.*, 269 F. Supp. 2d 1365, 1365 (J.P.M.L. 2003) (noting that Panel deferred decision on § 1407 motion in light of pending motion to dismiss, which then mooted the multidistrict character of litigation before the Panel).

Further, alternatives to § 1407 exist.  *In re Best Buy Co., Cal. Song-Beverly Credit Card Act Litig.*, 804 F. Supp. 2d at 1378 ("[C]entralization under Section 1407 should be the last solution after considered review of all other options.").  If any common issues remain after the early motions are decided, Uber is willing to coordinate informally with plaintiffs' counsel in the remaining cases to avoid duplicative discovery and motion practice.  *See In re Waggin' Train Chicken Jerky Pet Treat Prods. Liab. Litig.*, 893 F. Supp. 2d 1357, 1358 (J.P.M.L. 2012) ("Various mechanisms are available to minimize or eliminate the possibility of duplicative discovery even without an MDL.  In these circumstances, informal cooperation among counsel and coordination among the involved courts are, in our judgment, preferable to formal centralization.").

If appropriate, Uber would also be willing to explore other alternatives to § 1407 transfer, including coordination among actions pending in the same district and motions to stay any duplicative proceedings.  *See In re Quaker Oats Maple & Brown Sugar Instant Oatmeal Mktg. & Sales Practices Litig.*, MDL No. 2718, 2016 WL 3101830, at *2 (J.P.M.L. June 2, 2016); *In re Eli Lilly & Co. (Cephalexin Monohydrate) Patent Litig.*, 446 F. Supp. 242, 244 (J.P.M.L. 1978) (denying transfer where only three actions were involved and districts had "suitable alternatives"

-14-

to avoid duplicative litigation); *In re USS Trenton Disaster Litig.*, 383 F. Supp. 1406, 1407

(J.P.M.L. 1974) (per curiam) (denying § 1407 motion where eight actions had been consolidated

in two district courts and courts could avoid duplicative discovery through cooperative efforts

even if actions pending in another court were not transferred).  Especially given these

alternatives, the Panel should deny the motion to transfer.

>          **D.      Transfer Is Not Necessary for the Convenience of the Parties and the
>                    Witnesses.**

Plaintiff cannot establish that transfer is necessary for the convenience of the parties and

witnesses.  *See* 15 Charles Alan Wright & Arthur R. Miller, *Federal Practice & Procedure*

§ 3863 (4th ed. 2016) ("[T]he crucial issue in determining whether to order MDL treatment is . . .

whether the economies of transfer outweigh the resulting inconvenience to the parties") (internal

citations omitted).  As an initial matter, all cases at issue are pending in the district that the

relevant plaintiff *chose* to file his/her action.  In the four cases where discovery has commenced

(*Kafatos*, *Kolloukian*, *Lathrop*, *Vergara*) the location of those cases has not caused undue

inconvenience on the parties, and Plaintiff has not shown that transfer is necessary in those cases.

One case, *Lainer*, was resolved after the court granted Uber's motion to compel individual

arbitration.  (*See* Cheung Decl. ¶¶ 3, 4, Exs. 2, 3.)  In at least four other cases, Uber expects that

those plaintiffs' claims will be compelled to arbitration based on each plaintiff's separate

agreement to arbitrate those claims against Uber. (*Id.* ¶ 18.)  The plaintiffs in these four actions

reside in the districts (or at least the state) in which they filed suit (*see M. Johnson* Compl. ¶ 9;

*C. Johnson* Compl. ¶ 9, *Shaver* Compl. ¶ 8; and *Cubria* Compl. ¶ 8), so discovery regarding their

individual claims presumably is more convenient for plaintiffs in their home districts (or at least

their chosen forum).  *See In re Tyson Foods, Inc., Meat Processing Facilities Fair Labor*

*Standards Act (FLSA) Litig.*, 581 F. Supp. 2d 1374, 1375 (J.P.M.L. 2008) (declining to centralize

related cases because, *inter alia*, discovery was likely to be unique to each local workplace at

issue).  Uber expects that the remaining cases (*Calmese*, *Norman*) will be resolved after pleading

motions (or after motions to compel arbitration), and there is no reason to transfer those cases

simply to litigate a dispositive motion—especially where the action is pending in the district that the plaintiff chose to file the action.

## IV.    CONCLUSION

There is a high burden on the moving party to show that consolidation and transfer is warranted.  Plaintiff has not met that burden here.  For each of the reasons set forth above, Uber respectfully requests the Panel deny the MDL Motion.[8]

Dated: July 21, 2016                   Respectfully submitted,

TIFFANY CHEUNG
LUCIA X. ROIBAL
MORRISON & FOERSTER LLP
425 Market Street
San Francisco, California  94105-2482
Telephone:  415.268.7000
Facsimile:  415.268.7522
E-mail:  TCheung@mofo.com
            LRoibal@mofo.com

KAI S. BARTOLOMEO
MORRISON & FOERSTER LLP
12531 High Bluff Drive Suite 100
San Diego, California  92130-2040
Telephone:  858.720.5100
Facsimile:  858.720.5125
E-mail:  KBartolomeo@mofo.com

By: /s/ Tiffany Cheung
     Tiffany Cheung
     ***Attorneys for Defendant***
     ***Uber Technologies, Inc.***

---

[8] In the event that the Panel finds that Plaintiff has established all required elements for a § 1407 transfer to the Northern District of Illinois, Uber notes that the Honorable Judge Thomas Durkin is presiding over the first-filed case in that district, the *Vergara* action, which has been pending for almost a year.  All other actions in the Northern District of Illinois have been pending for less than three months.  Plaintiff provides no explanation as to why all cases should be transferred to the Honorable Sharon Coleman, who is presiding over the last-filed case in that district (and the last-filed case prior to Plaintiff's transfer motion).